UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LINDA JARRETT,

      Plaintiff,

v.

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Civil File No. 04-672 MJD/SRN

**REPORT AND RECOMMENDATION**

William Plummer, Esq., for Plaintiff

Lonnie F Bryan, Assistant United States Attorney, for Defendant

SUSAN RICHARD NELSON, United States Magistrate Judge

      Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who found that Plaintiff was not entitled to disability insurance benefits under Title II of the Social Security Act.

      The parties have submitted cross motions for summary judgment. (Doc. Nos. 15 & 16.) The matter has been referred to the undersigned United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, it is this Court's recommendation that the Commissioner's decision be reversed and the case be remanded for proceedings consistent with this Report and Recommendation.

**I.     BACKGROUND**

    **A.     <u>Procedural History</u>**

On January 16, 2002, Plaintiff applied for Social Security Disability Insurance Benefits. (<u>See</u> R. at 22.) In her application, Plaintiff claimed that she had been unable to work since April 23, 2000, due to extreme pain, muscle spasms, and limited mobility resulting from physical impairments which affect primarily her neck, arms, and back. (<u>Id.</u> at 48, 66.) The Commissioner denied her application both initially and upon subsequent reconsideration. (<u>Id.</u> at 26, 32.) Plaintiff then requested a hearing before an Administrative Law Judge, ("ALJ"), which was conducted on January 7, 2003 before ALJ Diane Townsend-Anderson. (<u>Id.</u> at 16.) Plaintiff appeared and testified at the hearing, with the assistance of her attorney. (<u>See id.</u> at 247-67.) Plaintiff argued that she was unable to work due to debilitating pain and depression. A vocational expert also testified at the hearing. (<u>See id.</u> at 267-71.) No medical expert testified.

On May 16, 2003, ALJ Townsend-Anderson issued a decision, in which she concluded that Plaintiff was not entitled to the benefits she was seeking because Plaintiff was not disabled. (<u>Id.</u> at 16-20.) Plaintiff asked the Appeals Council to review and overturn the ALJ's decision, but her request was denied, and the ALJ's decision was upheld. (<u>Id.</u> at 6-8.) Plaintiff then commenced the present action seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g).

The United States Attorney has filed an answer on behalf of the Social Security Administration, and the parties have submitted cross motions for summary judgment. The issues have been fully briefed, and the case has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court finds that the

ALJ did not adequately explain her reasons for rejecting Plaintiff's subjective complaints about her pain. It is therefore recommended that the matter be remanded for further proceedings.

### B. Relevant Facts

Plaintiff was thirty-nine on the date of the alleged onset of her disability and forty-two when the ALJ issued her decision. (See id. at 17, 21, 49.) She has obtained a high school equivalency diploma and received a certificate for medical transcription. (Id. at 251.) Her employment resume shows that she has worked as an auditor, a housekeeper at a hotel, a receiving clerk at a communications company, a records clerk at a hospital, and a typist for a cookbook publisher and a rebate company, among other jobs. (Id. at 17.) On April 24, 2000, Plaintiff claims she injured her right shoulder, elbow, and hand while lifting a bundle of medical records. (See id. at 119.) Her condition worsened over time, and Plaintiff quit her job as a typist in July 2000. (Id. at 75.) Physicians later diagnosed Plaintiff with having a herniated disc, and, on October 10, 2000, Plaintiff underwent a diskectomy and disc fusion surgery to correct the disc herniation. (Id. at 135.)

Following the onset of her injury, both before and after her October 2000 neck surgery, Plaintiff's medical records demonstrate she reported experiencing significant pain in her neck, shoulders, and right and left arms. For example, before the surgery, on June 7, 2000, Plaintiff reported that typing aggravated numbness in her fingers and that her arm would become numb in five to ten seconds. (Id. at 139.) On July 8, 2000, Plaintiff reported spontaneous relief of most of her pain. (Id. at 180.) But by August 24, 2000, Plaintiff told her treating physician that the pain had worsened and she agreed to have the neck surgery. (Id. at 181.) By September 26, 2000, Plaintiff reported having a lot of neck and arm pain which was getting "progressively worse." (Id. at 137.) The clinical summary

of Plaintiff prepared by her treating physician on the day of her neck surgery indicates that Plaintiff "presented with neck and excruciating right arm pain into the third and fourth fingers of the right hand." (Id. at 135.)

A year after her surgery, on October 17, 2001, Plaintiff reported experiencing constant pain with an average 6 pain level on a scale of 1-10 and occasional pain at the 10 level. (Id. at 133.) On December 12, 2001, her doctor recommended a "pain management approach. . . . [b]ecause of persistent spasms with pain down the arm." (Id. at 131.) When seen for a chronic pain rehabilitation consultation on February 25, 2002, Plaintiff reported experiencing an 8 pain level on a scale of 1-10 with knife-like stabbing sensations in the left side of her neck radiating into the left arm, some pain in her right side, and up and down her entire spine. (Id. at 128.) On July 16, 2002, Plaintiff reported being in constant neck and shoulder pain at the level of 9 to 10 on a 1-10 scale. (Id. at 212.) On October 21, 2002, Plaintiff reported her pain felt "like a 2 X 4 stuck in [her] neck" and was a 9 pain level on a 1-10 scale. (Id. at 219.)

## II.     ADMINISTRATIVE HEARING TESTIMONY

### A.     Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that she suffered from "constant pain" in her neck and mid-back and shoulders, had limited use of her arms and neck, and suffered from extreme tremors and weakness. (Id. at 251-52.) She also reported having little appetite due to her pain and that she had lost forty-six pounds in one year. (Id. at 253.) Plaintiff indicated that it "[u]sed to be I would have a good day every two or three weeks, but I honestly can't say that I've had a good day in the past six months." (Id. at 263.)

Plaintiff stated that she could brush her hair but could not "put it in heat rollers or use curling irons or anything like that, anymore." (Id. at 251.) She indicated that she could prepare meals, do laundry, and check emails, but does not drive a car anymore because of the pain caused by driving and could not shop for groceries because she could not push the cart or reach for food items on store shelves. (Id. at 252.) Plaintiff indicated that she could sit or stand for only about an hour at a time. (Id. at 257.) Plaintiff also claimed that she had difficulty cutting meat entrees at restaurants, could not lift heavy mugs, and occasionally had difficultly using zippers or buttons on clothes. (Id. at 264-65.) When asked how long she could use her hands repetitively, Plaintiff responded, "Oh, probably 15, 20 minutes, and then my hands get extremely cold, and I just can't use them." (Id. at 265.) Her attorney then asked how long she would need to rest before using her hands repetitively again and Plaintiff responded, "[a]n hour or two." (Id.)

When asked about taking pain medications, Plaintiff indicated that Valium made her sleepy and limited her ability to think while another medication, Torado, made her less sleepy but caused internal bleeding, so she limited its use. (Id. at 263.)

### B. Testimony of Vocational Expert

After receiving the testimony of Plaintiff, the ALJ posed the following hypothetical to the vocational expert (VE):

> Assume we have an individual who at onset was 39 years of age; who has a GED-plus education; who has work experience as outlined and modified by yourself . . .; who's on a number of medications, the only apparent side effects being some sleepiness, nausea, and diminished focus; who is impaired with a chronic pain disorder; is status post-surgical fusion; and who suffers from headaches; who is limited to lifting and carrying 10 pounds occasionally, five pounds frequently; who can do work that requires no reaching, pushing, or pulling, and I would define reaching as beyond arms length from the trunk of the body;

5

>no repetitive rotation, fixation, or flexation of the neck; no heights, ladders, scaffolding, or overhead work; and no repetitive fine fingering. Could such a person do any of the work the claimaint has previously done?

(Id. at 268.) The VE responded that Plaintiff could only perform the auditor position she previously had held but noted that 20,000 of these jobs existed in the state of Minnesota. (Id.) The VE also indicated that the hypothetical person could also perform 12,500 clerical-related positions, 6,000 billing clerk positions, and about 15,000 general office clerk positions in Minnesota. (Id.) Plaintiff's attorney then questioned the VE about the first hypothetical, asking what the VE's response would be if the "no repetitive fine fingering" language in the hypothetical meant that the hypothetical person needed an hour break after 20 minutes of fine fingering. (Id. at 269.) The VE responded that "[i]t virtually means you would not be able to sustain any kind of employment." (Id.)

The ALJ also posed a second hypothetical question to the VE: "[A]gain assume a similar individual, however, this time all the limitations and restrictions that the claimant's testified to are true and accurate. Would there be any work in the regional or national economy?" (Id. at 268-69.) The VE answer to the second hypothetical was "No." (Id. at 269.)

### C.     ALJ'S DECISION

Following the administrative hearing, the ALJ issued a six-page written opinion with her findings and decision. (Id. at 16-20.) The ALJ first rejected that Plaintiff's depression could be the basis for a finding of disability. (Id. at 18-19.) The ALJ found that "there [was] no evidence of a twelve month duration of depression or that she has ever undergone treatment for that condition." (Id. at 19.) Second, the ALJ concluded that, "the claimant's allegations of pain are only fair and appear to be exaggerated. This is based upon the fact that there are no objective findings regarding the causes of

6

claimant's pain and she is fairly active in her daily functioning." (Id.) The ALJ made the following findings:

1. The claimant is not engaged in substantial gainful activity since April 23, 2000.
2. The claimant met the disability insured status requirements of the Act at least through the date of this decision.
3. The claimant is suffering from severe impairments namely chronic pain and a history of a cervical fusion and a neck injury. However, her condition does not meet or equal the requirements of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.
4. The claimant's testimony regarding her impairments and their severity appear to be somewhat exaggerated.
5. The claimant retains the residual functional capacity to perform light work which does not require reaching, pushing or pulling, no repetitive rotation of the neck, and no climbing ladders and no overhead reaching or repetitive fine fingering.
6. The claimant is capable of performing her past relevant work as an auditor.
7. The claimant is now 41 years old which is as a younger individual.
8. The claimant has a high school equivalency diploma.
9. The claimant does not have any transferable work skills.
10. Considering the claimant's condition within the framework of Vocational Rule 201.21, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 there are a significant number of jobs in the economy which the claimant would be capable of performing. These include, in addition to auditor of which there are approximately 20,000, approximately 12, 500 receptionist, 6,000 billing clerk and 20,000 general office worker in Minnesota.
11. The claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of this decision.

(Id. at 19-20.)

### III.   STANDARD OF REVIEW

Judicial review of the final decision on a social security claim is restricted to assessing whether the ALJ's findings are supported by substantial evidence and whether the ALJ's decision was based on legal error. Clark v. Chater, 75 F.3d 414, 416 (8th Cir. 1996). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v.

Perales, 402 U.S. 389, 401 (1971). The Eighth Circuit has expanded upon this substantial evidence standard, holding that the ALJ's decision must be based upon substantial evidence on the record as a whole. Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989). This expanded standard requires the court to do more than search for the existence of substantial evidence which supports the ALJ's findings. Id. at 175. The substantiality of the evidence must take into account whatever is in the record that fairly detracts from its weight. Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989). But the Court "may not reverse merely because substantial evidence would have supported an opposite decision." Gaddis v. Chater, 76 F.3d 893, 895 (8th Cir. 1996) (internal citations omitted). "As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome or because we would have decided the case differently." Burnside v. Apfel, 223 F.3d 840, 843 (8th Cir. 2000) (citation omitted). The ALJ's decision in this case must be reviewed with the foregoing principles in mind.

**IV.    DISCUSSION**

After reviewing the record and the arguments of the parties, the Court concludes that the outcome of this case depends on the adequacy of the ALJ's assessment of Plaintiff's subjective complaints regarding her pain. If the ALJ properly rejected Plaintiff's subjective complaints, the record would support her conclusion that Plaintiff has the residual functional capacity to perform the jobs described by the VE—certain auditor and various clerical positions. On the other hand, if the ALJ did not properly evaluate Plaintiff's pain, her decision cannot stand.

In order to properly evaluate a claimant's subjective complaints of pain, the ALJ

> is required to make a credibility determination by taking into account the following factors: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional limitations. Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints.

Hutton v. Apfel, 175 F.3d 651, 654-55 (8th Cir. 1999) (citation omitted). These factors are sometimes referred to as the Polaski factors, after the case in which they were first articulated, Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

"The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the record as a whole." Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). In other words, the ALJ can properly discredit a claimant's subjective complaints, if they are inconsistent with other evidence of record.

But "[i]f an ALJ rejects a claimant's testimony regarding pain, he must make an express credibility determination detailing his reasons for discrediting the testimony." Prince v. Bowen, 894 F.2d 283, 286 (8th Cir. 1990) (emphasis added); see also Ghant v. Bowen, 930 F.2d 633, 637 (8th Cir. 1991) ("An ALJ who rejects a claimant's complaints . . . must make an express credibility determination explaining his reasons for discrediting the complaints."). If an ALJ does not explain why he rejected a claimant's subjective complaints, a reviewing court cannot tell whether his determination was properly made. Sorich v. Shalala, 838 F. Supp. 1354, 1361 (D. Neb. 1993) ("Without a serious discussion of the Polaski factors in relationship to whatever inconsistencies the ALJ may find, a reviewing court is left in the dark as to why the ALJ chose to disbelieve the claimant.").

Here, Plaintiff has consistently reported experiencing severe pain, both before and after her surgery. While she reports brief periods of some pain relief, for the most part, Plaintiff has consistently

9

complained of excruciating pain in her neck, shoulders, and arms that limits her ability to perform routine tasks of daily life such as walking, shopping for groceries, and driving a vehicle. She claims this pain increased in the year prior to the administrative hearing. The ALJ's findings indicate that the ALJ was aware that the Plaintiff complained of "severe" and "constant pain in her neck and shoulders." (Id. at 17-18.) The only basis identified in the ALJ's opinion for discounting the Plaintiff's pain allegations is the ALJ's finding that Plaintiff's pain allegations were "only fair" and "appear[ed] to be exaggerated" because "no objective findings" supported the pain allegations and that Plaintiff was "fairly active in her daily functioning" (Id. at 19 (emphasis added)).

The Court disagrees with the ALJ's characterization of Plaintiff's pain allegations as "only fair." The ALJ's own findings indicate: "The claimant is suffering from severe impairments namely chronic pain and a history of a cervical fusion and a neck injury." (Id.) Additionally, there is ample evidence that Plaintiff repeatedly reported to different medical providers that her pain was severe and she testified that the pain limited her ability to work with her hands for more than twenty minutes at a time and then she required a resting time of one hour in between such repetitive work periods. (Id. at 265.) The ALJ apparently found these claims exaggerated based upon unspecified "fairly active" daily functions performed by Plaintiff.

The ALJ erred when she neglected to explain why she found Plaintiff's complaints of pain to be inconsistent with the other evidence. See Cline v. Sullivan, 939 F.2d 560, 569 (8th Cir. 1991) (ALJ's decision is deficient and must be set aside where the ALJ does not adequately explain the inconsistencies that caused the claimant's subjective complaints to be rejected). Even assuming that the ALJ based her decision on Plaintiff's testimony that she could do laundry, make meals, or check email

correspondence, the ALJ did not explain how or why those activities would be inconsistent with Plaintiff's subjective complaints about her pain as it limits her ability to work.

In some cases, an ALJ may not need to provide a comprehensive explanation of the inconsistencies that caused her to reject the claimant's subjective complaints. If, for example, a claimant testified that he suffered from debilitating back pain, but the record showed that he went bowling five nights a week, the inconsistency would be readily apparent. In this case, however, Plaintiff's subjective complaints are not so obviously inconsistent with the rest of the record. The Court finds nothing in Plaintiff's testimony, or anywhere else in the record, that is inherently inconsistent with Plaintiff's subjective complaints. Plaintiff's de minimis level of physical activity is not necessarily inconsistent with her complaints of pain and the side effects of her medications. See Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir. 1996) (noting that "[t]o establish disability, [a claimant] need not prove that her pain precludes all productive activity and confines her to life in front of the television").

The Court finds nothing in the evidence cited by the ALJ (or elsewhere in the record), which clearly demonstrates, without the need for any further explanation, that Plaintiff must be lying or exaggerating about her pain. If there are inconsistencies in the record that support the ALJ's credibility determination, those inconsistencies are not self-evident. This does not necessarily mean, however, that she reached the wrong conclusion. The ALJ may be able to provide a very logical and persuasive explanation for her credibility determination. She may able to point to specific and significant inconsistencies between Plaintiff's subjective complaints and "the record as a whole." For this reason, the ALJ's decision should not be reversed outright. Instead, the matter should be remanded, so that the ALJ can reconsider Plaintiff's credibility. See Baumgarten, 75 F.3d at 370 (remanding case for further

consideration of claimant's credibility where the ALJ's initial evaluation was deficient); Cline 939 F.2d at 569 ("When the Secretary erroneously concludes that a claimant's allegations of pain are not credible . . . remand for further proceedings . . . is generally appropriate."). If the ALJ still disbelieves Plaintiff's testimony regarding her pain, she will have to explain more fully just why it is that she finds her subjective complaints to be inconsistent with the record as a whole.[1]

---

[1] It should be left to the ALJ to decide whether any further evidentiary hearings would be helpful in this matter. If the ALJ believes that she can fully explain her reasons for not accepting Plaintiff's subjective complaints of pain based on the existing record, then perhaps it will not be necessary to conduct any new hearings, or to otherwise expand the record. On the other hand, the ALJ may find it easier to explain her evaluation of Plaintiff's credibility, (or she may alter her evaluation), if she elicits further evidence on which to base her decision.

Based on the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion for Summary Judgment, (Docket No. 16), be **DENIED**;

2. Plaintiff's Motion for Summary Judgment, (Docket No. 15), be **GRANTED** as set forth herein; and

3. This matter be remanded to the Social Security Administration for further proceedings to address the errors discussed herein.

Dated: July 7, 2005

   s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by July 22, 2005, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.